UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GERTRUDE JEAN PIERRE,

                  Plaintiff,

    -against-

MACY'S, INC., PRUDENTIAL, MACY'S COBRA, DAVID PAROLA, DANIEL NISKI, JACQUELYN PETRUCELLI and PAUL YOUNG,

                  Defendants.
----------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
16-CV-2556 (JMA)(AKT)

**FILED**
**CLERK**
3/29/2018 12:43 pm
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**APPEARANCES:**

    Gertrude Jean Pierre
       *Pro Se Plaintiff*

    Linda Wong
    Wong Fleming PC
    1230 Avenue of the Americas
    Rockefeller Center, 7th Floor
    New York, NY 10020
       *Attorney for Defendants Macy's Retail Holdings, Inc., David Parola, Daniel Niski, Jacqueline Petrucelli and ADP LLC*

    Ashley M. Martin
    U.S. Equal Employment Opportunity Commission
    131 M Street N.E.
    Washington, DC 20507
       *Attorney for Defendant Paul Young*

    Alnisa Shakirah Bell
    Seyfarth Shaw LLP
    620 8th Avenue
    New York, NY 10018
       *Attorney for Defendant The Prudential Insurance Company of America*

**AZRACK, United States District Judge:**

Before the Court are: (1) defendant Paul Young's motion to dismiss; (2) defendant the Prudential Insurance Company of America's ("Prudential") motion to dismiss; and (3) a joint-motion for summary judgment filed by ADP LLC, Macy's Retail Holdings, Inc. ("Macy's") and other related defendants.

## I.    BACKGROUND

The *pro se* plaintiff's claims arise from her employment and termination with Macy's, termination of her disability benefits and termination of her health care coverage under the Consolidated Omnibus Budget Reconciliation Act (COBRA). As the motions before the Court only concern events that took place after plaintiff was terminated from her employment, only facts relevant to that time period are included.

### A.    Termination of Plaintiff's Employment and Disability Benefits

Plaintiff was terminated from her sales associate position at Macy's in October 2015. On or about November 5, 2015, plaintiff filed a claim for short-term disability ("STD") benefits, claiming an inability to work due to symptoms relating to migraine headaches. (Prudential's Br. 4.) On November 15, 2015, Prudential approved one month of STD benefits effective October 20, 2015 through November 22, 2015. (Id.) On February 11, 2016, Prudential notified plaintiff via letter, that based on the medical information received on February 8, 2016, there was no medical evidence to support continued disability beyond November 22, 2015, the date on which plaintiff visited her neurologist who found plaintiff's clinical and diagnostic exams to be normal. (Id.) Accordingly, Prudential determined that no further STD benefits were payable beyond November 22, 2015. (Id.) Prudential's February 11, 2016 letter also notified plaintiff that she had a right to submit an administrative appeal "within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied." (Prudential's Br., Ex. 3.) There is no

2

indication in the complaint or any of the other submissions that plaintiff ever submitted an administrative appeal.

### B. Termination of COBRA Continuation Coverage by ADP

By letter dated November 4, 2015, ADP notified plaintiff of her right to elect COBRA continuation coverage to continue her benefits under Macy's Health Care Plan. (Defs.' Local Rule 56.1 Stmt. of Facts ("Defs.' 56.1") ¶ 1, ECF No. 91-5.) The notice made clear that plaintiff was required to make monthly premium payments in order to continue her health care benefits and that failure to make these payments on time would result in a loss of health care coverage. (Id. ¶ 2.) The notice also explained that after the initial payment, each monthly premium for continuation coverage was due on or before the first day of the month for which benefits were provided. (Id. ¶ 3.) The notice further explained that there was a grace period during which plaintiff could make premium payments to remain eligible for benefits and that the grace period extended through the last day of the month. (Id. ¶ 4.) Plaintiff elected COBRA health care coverage in or around November 2015. (Zirock Decl. ¶ 2.) Plaintiff made COBRA premium payments on November 23, 2015, December 14, 2015, January 5, 2016 and February 29, 2016 for COBRA health benefits received in each of those months. (Defs.' 56.1 ¶ 5.) On or about February 4, 2016, ADP, the COBRA administrator, sent plaintiff an email reminding her that her next COBRA premium payment was due on March 1, 2016 and that the grace date was March 31, 2016. (Zirock Decl., Ex. C, ECF No. 91-3.). The email enclosed a letter which provided the following warning: "If you fail to make a full payment for a coverage period before the end of the grace date for that coverage period, you will lose all rights to continuation coverage under the plan." (Id.) ADP sent plaintiff another email on or about February 11, 2016, which provided the same notice that payment for her March benefits were due on March 1, 2016 and that the grace date was March 31, 2016. (Defs.' 56.1 ¶ 7.) Plaintiff failed to pay her COBRA premium payment by March 31, 2016, the last day

3

of the March 2016 grace period. (Id. ¶ 9.) By letter dated April 5, 2016, ADP sent plaintiff notice that her COBRA coverage had been terminated for non-payment of her March 2016 premium. (Id. ¶ 10.) By letter dated April 4, 2016, plaintiff requested that ADP reinstate her COBRA benefits "due to the fact that I thought my grace period ended on 4/3/16 as the 3rd was the last grace period date." (Compl., Ex. 10, ECF No. 1.) That same letter indicated that plaintiff had also called ADP earlier that day. (Id.) By letter dated April 6, 2016, ADP notified plaintiff that it could not approve her request for COBRA continuation coverage as plaintiff had failed to make her premium payment by March 31, 2016. (Defs.' 56.1 ¶ 11.)

### C. Plaintiff's EEOC Claim

On February 2, 2016, plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC"), alleging that Macy's had discriminated against her on the basis of race, sex, age, disability, national origin, retaliation, and color. (Compl., Ex. 2.) On February 11, 2016, the EEOC issued to plaintiff a right to sue letter stating that based upon its investigation, the EEOC was unable to conclude that any discrimination had occurred. (Id.) Paul Young is listed as the investigator on the right to sue letter. (Id.)

## II.   PROCEDURAL HISTORY

On May 9, 2016, *pro se* plaintiff commenced this action against Macy's Retail Holdings, Inc. (incorrectly referenced in the complaint as "Macy's, Inc." and "Macy's Cobra"), David Parola, Jacqueline Petrucelli, Daniel Niski (collectively, "the Macy's Defendants") and ADP, LLC (incorrectly referenced in the complaint as "ADP Cobra Services"). In her complaint, plaintiff alleges that she was subject to discrimination based on her race, color, national origin and temporary disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12112-12117, the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297, and the

4

New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131, and that she was retaliated against for taking medical leave. Plaintiff also alleges breach of contract, racketeering, "violation of life event," and the improper termination of health benefits arising out of her employment. (Compl. at 1, ¶ 2A.) It is unclear from the complaint which claims plaintiff asserts against each defendant.

Plaintiff did not file proof of service of the complaint on any of the defendants within the 90-day period set out by Federal Rule 4(m). The Macy's Defendants executed and filed a waiver of service on June 10, 2016. (See ECF No. 8.) ADP executed and filed a waiver of service on June 28, 2016. (See ECF No. 19.) Neither Young nor Prudential executed a waiver of service.

On July 29, 2016, the Macy's Defendants filed a motion to compel arbitration of plaintiff's employment-related claims and to dismiss plaintiff's COBRA benefits claim or to stay those claims pending arbitration. By Order dated November 23, 2016, the Court granted the Macy's Defendants' motion to compel arbitration of plaintiff's employment-related claims and stayed those claims pending completion of arbitration, but denied the Macy's Defendants' motion to stay plaintiff's COBRA claim. (See Order Dated November 23, 2016, ECF No. 55.)

In that same Order, the Court noted that plaintiff had failed to file proof of service on defendants Young and Prudential. The Order stated that pursuant to Federal Rule of Civil Procedure 4(m), plaintiff was obligated to serve those defendants by August 8, 2016, 90 days from the date the complaint was filed. (Id. at 12.) Accordingly, the Court ordered plaintiff to file, within two weeks from the date of that Order, proof that she had served defendants Young and Prudential on or before August 8, 2016 or to show good cause as to why service was not effected by that date. (Id. at 12-13.) The Order also stated that plaintiff could request an extension of time to effect service and that such a request must include the reasons for the delay in service. (Id. at 13.) The Court warned that failure to provide proof of timely service or good cause to excuse

5

noncompliance with Federal Rule 4(m) would result in the dismissal of plaintiff's claims against Young and Prudential. (Id.)

Plaintiff never requested an extension nor gave the Court any explanation for the delay in service on defendants Young and Prudential.

On November 30, 2016, plaintiff mailed a copy of the summons and complaint to defendant Young. Plaintiff did not send a copy to the U.S. Attorney's Office or to the U.S. Attorney General as required for service of process on federal officers and employees sued in their official capacity pursuant to Federal Rule of Procedure 4(i)(1) and (2). Fed. R. Civ. P. 4(i)(1)-(2).

On that same day, plaintiff mailed a copy of the summons and complaint by certified mail return receipt to John Strangfeld, CEO of Prudential with a copy of the Court's November 23, 2016 Order. (See Pl.'s Br. 2; Bell Decl., Ex. 7, ECF No. 89-3.) Plaintiff included only one statement of service and did not include a stamped return envelope. (See Pl.'s Br. 3; Bell Decl., Ex. 9.) However, N.Y. C.P.L.R. § 312-a requires that when serving through the mail as an alternative to personal service, the plaintiff must include two statements of service as well as a "return envelope, postage prepaid, addressed to the sender." § 312-a(a). Plaintiff filed an affidavit of service with the Court on December 5, 2016 in which she swore that she had served Young and Prudential on November 30, 2016. (See ECF No. 62.)

On May 4, 2017, plaintiff filed a motion for recusal of the undersigned and Magistrate Judge A. Kathleen Tomlinson. (See ECF No. 87.)

On July 21, 2016, the parties filed the following fully briefed motions: (1) defendant Young's motion to dismiss; (2) defendant Prudential's motion to dismiss; and (3) ADP and the Macy's Defendants' motion for summary judgment. (See ECF Nos. 89-91.) In response to defendants' motions, plaintiff submitted various documents, including 50 pages of rambling text in which she asserts some "facts" pertaining to her claims as well as a litany of accusations against

6

all parties involved in this case, the Court, its employees and the government in general. (See ECF Nos. 89-7, 90-2, 92.) For example:

> Basically, government employees (judges, agency employees, court employees, etc..), Lawyers and employers, are in collusion and have committed the act of human trafficking against me through one of them making a false accusation in this case David Parola and Jacqueline Petrucelli either they come running or I go to one of them (government, agency, the person in charge/managers, lawyers, etc..) for help instead of helping me, they engage in the act of trapping me while pretending to be acting as an arm length of the government but instead are embezzlers, abusing the power and process of the job they took to have access to government systems, corporate system and rule over civilians living in the land only to plunder.

(Pl.'s Opp. 23.) [1]

For the reasons set forth below, the Court DENIES plaintiff's motion for recusal and GRANTS all three of defendants' motions.

### III.   DISCUSSION

#### A.  Plaintiff's Recusal Motion

Plaintiff has filed a recusal motion, pursuant to 28 U.S.C.A. § 455, seeking to disqualify both the undersigned and Magistrate Judge Kathleen Tomlinson from presiding over this action. In this same motion, she requests that this case be transferred to the Brooklyn courthouse. Plaintiff states no rational basis for her motion, but instead attaches a nine-page affidavit in which she makes nonsensical and inflammatory accusations about the undersigned, Magistrate Judge Tomlinson, the parties involved in this case, the court system and the government in general. (See Pl's Recusal Mot. Affidavit 4 ("What Judge Joan Azrack and Magistrate Judge Tomlinson have done is violating complainant's cause of action while waging war against her constitutional rights (the right to sue, to present evidence and be justified). Instead they have participated as co-conspirators in the vendetta to ruin me to bring death upon me when I have committed no crimes

---

[1] When citing to plaintiff's opposition, the Court will use the ECF pagination, regardless of the pagination within the document.

and crimes are being committed against me because of my race and abilities.").) It is clear from plaintiff's filings that she is unhappy with the Court's previous rulings in this matter, but that alone cannot serve as a proper basis for disqualification. See Chen v. Chen Qualified Settlement Fund, 552 F.3d 218, 227 (2d Cir. 2009) ("Generally, claims of judicial bias must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality.")

Similarly, plaintiff's dissatisfaction with the Court's handling of the case does not justify transferring this matter to another venue. This case was transferred from the Southern District on May 17, 2016, (see ECF No. 5), and this Court has already conducted a de novo review of plaintiff's earlier motion to transfer this case back to the Southern District and determined that transfer to this venue was appropriate. (See ECF No. 55.) Accordingly, plaintiff's motion for recusal and to transfer venue is denied.

### B. Service of Process

Defendants Young and Prudential assert that plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5) for failure to properly serve the defendants.

Both defendants argue that the complaint should be dismissed due to plaintiff's failure to serve the defendants within the 90-day time period after the complaint was filed pursuant to Federal Rule 4(m).

Defendant Young further asserts that plaintiff's failure to either send or deliver a copy of the complaint to the United States Attorney for the Eastern District, or to send a copy of the complaint by registered mail to the EEOC did not comply with Federal Rule of Civil Procedure 4(i), which sets forth the requirements for effectuating service of process on federal officers and employees sued in their official capacity.

8

Defendant Prudential also argues that aside from being untimely, plaintiff's later attempt to serve Prudential was improper because she failed to comply with Rule 4(h), which requires personal service upon an officer, a managing or general agent, or any other agent authorized to receive service. See Fed. R. Civ. P. 4(h). Prudential also claims that plaintiff failed to comply with N.Y. C.P.L.R. Sections 311 or 312-a because she enclosed only one, not two, statement of service and failed to enclose either an acknowledgment of receipt or a pre-paid stamped return envelope. (See Bell Decl., Ex. 7.)

"Where a *pro se* plaintiff has failed to effectuate timely service, courts have typically held that dismissal without prejudice is appropriate." Terry v. Vill. of Ossining, No. 12-CV-5855, 2013 WL 5952834, at *3 (S.D.N.Y. Nov. 5, 2013). Federal Rule 4(m) requires the district court to extend the time for service for an appropriate time if the plaintiff demonstrates good cause for the failure to timely serve the defendants. Fed. R. Civ. P. 4(m). In the absence of good cause, the district court has discretion to either grant or deny an extension of the period of service. See Harper v. City of New York, 424 F. App'x 36, 39 (2d Cir. 2011) ("We have interpreted the Rule to give courts both the discretion to grant extensions of the period of service even where no good cause has been shown and, in the absence of good cause, to deny such extensions—that is, a court 'may grant an extension . . . but it is not required to do so.'") (quoting Zapata v. City of New York, 502 F.3d 192, 197 (2d Cir. 2007)).

A litigant's "*pro se* status 'is not automatically enough to constitute good cause' for the purposes of Rule 4(m)." Id. at *5 (quoting Cioce v. Cty. of Westchester, No. 02-CV-3604, 2003 WL 21750052, at *4 (S.D.N.Y. July 28, 2003), aff'd, 128 F. App'x 181 (2d Cir. 2005)); see also Zapata v. City of New York, 502 F.3d 192, 198 (2d Cir. 2007) ("before we will even consider vacating a Rule 4(m) dismissal for abuse of discretion, the plaintiff must ordinarily advance some colorable excuse for neglect").

9

The Court made clear in its Order dated November 23, 2016 that plaintiff needed to file proof that she had served defendants Young and Prudential on or before August 8, 2016 or to show good cause as to why service was not effected by that date. The Order warned that failure to provide proof of timely service or good cause to excuse noncompliance with Federal Rule 4(m) would result in the dismissal of plaintiff's claims against Young and Prudential. The Order also gave plaintiff the opportunity to request an extension of the time to serve, but required that such request include her reasons for the delay in service. Plaintiff never requested an extension and her affidavit of service indicated that she served defendants Young and Prudential on November 30, 2016, long after the 90-day period had expired.

Plaintiff has not provided any reasons for her failure to timely serve defendants Young and Prudential. Additionally, plaintiff's untimely attempts to serve those defendants were deficient for the reasons stated in defendants' motions. See Amnay v. Del Labs, 117 F. Supp. 2d 283, 287 (E.D.N.Y. 2000) (dismissing *pro se* complaint for failure to properly serve defendant pursuant to Rule 4 or the N.Y. C.P.L.R.). Moreover, defendants' motions, which detailed these deficiencies in service, have been pending for more than eight months and plaintiff has made no effort to properly serve Young and Prudential during that time. Lastly, dismissal of plaintiff's claims without prejudice, in combination with the relevant statute of limitations will not result in a dismissal with prejudice. Civil RICO claims have a four-year statute of limitations. See, e.g., Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 152 (1987). Here, the events that form the basis of plaintiff's claims against Young and Prudential took place in February of 2016 and therefore the limitations period has not yet expired.

Accordingly, the Court finds that no good cause exists to excuse plaintiff's failure to effect service. Likewise, "in light of [p]laintiff's more than six month delay in processing [her] claims,"

the Court declines to extend the period of time for service and dismisses all of plaintiff's claims against Young and Prudential, without prejudice. Terry, 2013 WL 5952834, at *6.

### C.  RICO Claims against Young and Prudential

The Court also finds that, even if plaintiff had properly served defendants Young and Prudential, her claims must still be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

#### i.  *Motion to Dismiss Standard*

*Pro se* submissions are afforded wide interpretational latitude and should be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997). In addition, the Court is required to read the plaintiff's *pro se* complaint liberally and interpret it as raising the strongest arguments it suggests. United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011) (per curiam) (citation omitted); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

The Supreme Court has held that pro se complaints need not plead specific facts—rather the complainant "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks and citations omitted); cf. Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, a *pro se* plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. While "'detailed factual allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555.) The facts

11

pled "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Twombly, 550 U.S. at 555.

*ii. Application*

The RICO statute makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Although the RICO statute concerns criminal offenses, it also provides for a private right of action for "[a]ny person injured in his business or property by reason of a violation of" the statute. 18 U.S.C. § 1964(c).

Civil RICO has been described by courts as an "unusually potent weapon" as well as the "litigation equivalent of a thermonuclear device." Cedar Swamp Holdings, Inc. v. Zaman, 487 F. Supp. 2d 444, 449 (S.D.N.Y. 2007) (quoting Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), aff'd sub nom, 113 F.3d 1229 (2d Cir. 1997)). "Because the 'mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" Katzman, 167 F.R.D. at 655 (quoting Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir. 1990)); see also Wood v. Gen. Motors Corp., No. 08-CV-5224, 2015 WL 1396437, at *4 (E.D.N.Y. Mar. 25, 2015) ("A plaintiff's burden is high when pleading civil RICO allegations.").

To sufficiently plead a civil RICO claim, a plaintiff must allege: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity, (5) injury to business or property, and (6) that the injury was caused by the RICO violation. See Brookhaven Town Conservative Comm. v. Walsh, 258 F. Supp. 3d 277, 283 (E.D.N.Y. 2017); Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 119 (2d Cir. 2013)). "The pattern of racketeering activity must consist of two or more predicate acts of racketeering." Id. The statute defines racketeering activity as "any act

12

which is indictable" under certain provisions of Title 18, including bribery and fraud. 18 U.S.C. § 1961(1)(B).

Plaintiff cannot state a cause of action under RICO as she fails to allege any of the elements of a civil RICO claim with respect to either Young or Prudential. Indeed, plaintiff's very brief complaint almost entirely concerns her claims for unlawful termination against Macy's. The only sentence that could even be construed as referring to Young and Prudential states, "Everyone else just join in to deprive me of my privilege and rights to benefits and resources." (Compl. at 1) However, plaintiff does not allege the existence of an enterprise, any predicate acts committed by that enterprise that would constitute racketeering activity, nor any injury caused by such acts. Plaintiff's opposition does not provide any additional facts from which the Court can determine the basis for her civil RICO claim. Instead, plaintiff's submissions largely consist of a 50-page nonsensical rant about "crimes committed against [her]." (Pl.'s Opp. at 26.) In a section entitled "A continuing criminal enterprise/a lynch mob," plaintiff sets out an incoherent chronology of facts relating to her termination from Macy's. (Id. at 27.) Another section, which appears to include the only other reference to a potential RICO claim, reads as follows:

> They want me dead. Government employees facilitating crimes against my life is not only committing terrorism against a citizen but cause the government to practice democide because despite my numerous complaints there's been no actions to stop the terrorism but great assault for instance from the Division of Human Rights and no other intervention. This is the organized criminal acts perpetrated against me.

(Id. at 25.)

It is only from reading the defendants' submissions that the Court can surmise that plaintiff's gripe with Young is that he was the point of contact at the EEOC's New York District Office, which declined to litigate plaintiff's claims of discrimination against her former employer.[2]

---

[2] Plaintiff cannot state a claim against Young under either Title VII or the ADA as these statutes provide a remedial scheme for pursuing claims of discrimination against employers and do not provide a private right of action for an individual who is unhappy with the EEOC's decision not to litigate her employment discrimination claims. See Heller

13

(See Compl., Ex. 2.) Similarly, it appears that plaintiff's claim against Prudential stems from the discontinuance of her STD benefits after Prudential received medical reports from plaintiff's doctor indicating that her clinical and diagnostic exams were normal. (See Bell Decl., Ex. 3.) Plaintiff fails to plead any facts that would form the basis of a plausible RICO claim, and therefore her claims against both Young and Prudential fail.

### D. ERISA

Prudential's brief notes the possibility that plaintiff could have brought a claim pursuant to Section 502(a)(1)(B) of ERISA since Macy's employee benefit plan is governed by ERISA. Plaintiff never stated any such claim in her complaint. Nor do any of plaintiff's multiple submissions provide any facts that could form the basis of a plausible ERISA claim. Accordingly, to the extent plaintiff's complaint could be construed as including an ERISA claim against Prudential, that claim would also be dismissed.

### E. Termination of COBRA Coverage

ADP and the Macy's Defendants seek summary judgment on plaintiff's claim that her COBRA coverage was improperly terminated.

#### i. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

v. Consol. Rail Corp., 331 F. App'x 766, 768 (2d Cir. 2009) ("Additionally, as appellant did not allege that either the EEOC or the Railroad Retirement Board was his employer, he could not state a claim against them under the provisions of Title VII, the Americans with Disabilities Act, and the ADEA, which apply only to discriminatory practices by an employer.").

to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' for these purposes if it might affect the outcome of the suit under the governing law," while "[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "When ruling on a summary judgment motion, [the Court] must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

   ii. *Application*

COBRA requires that employees who are terminated by their employer and who had been covered by a group health care plan be given the option to continue their coverage at the group rate for 18 months after their termination. See 29 U.S.C.A. § 1161. The employee is responsible for the cost of the benefits under the plan (i.e., premiums) and the failure to make timely payment of the premiums required under the plan results in termination of coverage. See 29 U.S.C.A. § 1162(2)(C) (stating that continuation coverage ends on "[t]he date on which coverage ceases under the plan by reason of a failure to make timely payment of any premium required under the plan with respect to the qualified beneficiary"); Commc'ns Workers of Am., Dist. One, AFL-CIO v. NYNEX Corp., 898 F.2d 887, 889 (2d Cir. 1990) ("COBRA permits health plans to require the timely payment of a premium for such continuation coverage.")

After the first premium payment, all other premium payments are "considered to be timely if made within 30 days after the date due." See 29 U.S.C.A. § 1162(2)(C). "COBRA requires that an employer must notify the plan administrator of the termination within 30 days thereof and the plan administrator then has 14 days to provide the COBRA notice to the terminated employee."

15

Polito v. Tri-Wire Eng'g Sol., Inc., 699 F. Supp. 2d 480, 489 (E.D.N.Y. 2010); see also 29 U.S.C.A. § 1166.

In this case, there is no dispute that ADP notified plaintiff of her right to elect COBRA continuation coverage to continue her benefits within the required time period and that plaintiff elected COBRA coverage. Nor is there any dispute that plaintiff was notified that she must make timely monthly premium payments in order to continue her health care benefits and that failure to do so would result in a loss of health care coverage. In fact, plaintiff herself provided the Court with the initial notice she received from ADP detailing: (1) the start date of her coverage; (2) that after the initial payment, her premiums were due on the first of the month, subject to a 30-day grace period; and (3) that failure to make timely payments could result in termination of coverage. (See Pl.'s Opp., Ex. A.) Indeed, plaintiff made timely premium payments for the first four months following her election of coverage. However, plaintiff failed to pay her March 2016 premium payment by either the due date, March 1, 2016, or the end of the grace period, March 31, 2016. Accordingly, ADP was free to terminate plaintiff's continuation coverage under COBRA.

## IV. CONCLUSION

For the foregoing reasons, defendant Young's motion to dismiss is GRANTED without prejudice, defendant Prudential's motion to dismiss is GRANTED without prejudice, and ADP and the Macy's Defendants' motion for summary judgment is GRANTED with prejudice. The Clerk of Court is directed to enter judgment on plaintiff's COBRA claims in favor of ADP and the Macy's Defendants, to close this case and to send a copy of this Order to the *pro se* plaintiff.

**SO ORDERED.**

Date: March 29, 2018  /s/ (JMA)
 Central Islip, New York Joan M. Azrack
 United States District Judge